**In the United States District Court
for the District of Kansas**

————————

Case No. 25-cv-02319-TC

————————

JEREMY S. H.,[1]

*Plaintiff*

v.

FRANK BISIGNANO,
COMMISSIONER OF SOCIAL SECURITY,

*Defendant*

————————

## MEMORANDUM AND ORDER

Plaintiff Jeremy H. claims that he is disabled and cannot work due to a combination of physical and mental impairments. He seeks review of a decision of the Commissioner of Social Security denying a period of disability, Disability Insurance Benefits, and Supplemental Security Income, pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A). For the following reasons, the Commissioner's final decision is affirmed.

**I**

**A**

**1.** Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions. 42 U.S.C. § 405(g). These cases require a careful review of the record to determine whether "substantial evidence supports the factual findings and whether the [administrative law judge] applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence in support of a finding is substantial if "a reasonable mind might accept [it] as

---

[1] Plaintiff is referred to only by first name and initials to protect his privacy. *See, e.g.*, *Joseph M. v. Kijakazi*, No. 22-1065, 2023 WL 2241526, at *5 (D. Kan. Feb. 27, 2023).

adequate to support a conclusion," and therefore must be "more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The ALJ's findings must be grounded in substantial evidence and demonstrate that the ALJ "consider[ed] all relevant medical evidence in making those findings." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)). Consequently, the court will "not reweigh the evidence or try the issues de novo," but it will "meticulously examine the record as a whole . . . to determine if the substantiality test has been met." *Id.* (citations omitted).

**2.** To evaluate an application for disability benefits, the Commissioner uses a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) (disability insurance), 416.920(a)(4) (supplemental security income); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). The claimant bears the burden of proof for the first four steps, but the Commissioner does for the fifth. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether the claimant has any severe impairments, and whether any of those impairments meets or equals the severity of any impairment in the Listing of Impairments found in 20 C.F.R., Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii), 416.920(a)(4)(i)–(iii); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The fourth and fifth steps of the analysis depend on the claimant's residual functional capacity (RFC), which the Commissioner assesses after completing the third analytical step. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is the most the claimant can do despite limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1). The Commissioner determines the claimant's RFC based on all relevant evidence in the record. SSR 16-3p, 2017 WL 5180304, at *4–*5 (Oct. 25, 2017).

After analyzing the claimant's RFC, the Commissioner proceeds to the fourth and fifth steps of the analysis. At step four, the Commissioner determines whether the claimant can perform his or her past relevant work in light of his or her RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. *Id.* At step five, the Commissioner bears the burden to show—in light of the claimant's RFC, age, education, and work experience—that

suitable work "exists in significant numbers in the national economy." *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c)(2), 416.960(c)(2).

**B**

Jeremy claims he is unable to work because of body and joint pain, depressive symptoms, problems with concentration and memory, hallucinations and paranoia, and difficulty standing and walking. Doc. 5 at 3; Adm. Rec. at 24, 48.[2] He protectively filed his Title II and Title XVI applications on January 6, 2022, alleging disability beginning April 11, 2021. Adm. Rec. at 17. The agency denied the claims initially and, on reconsideration, an administrative law judge held a hearing. On June 10, 2024, the ALJ issued a decision denying benefits. *Id.* The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. *Id.* at 1–6. Jeremy appeals. Doc. 5 at 1.

At step one, the ALJ found that Jeremy had not engaged in substantial gainful activity since the alleged onset date. Adm. Rec. at 19. Then, at step two, the ALJ found that Jeremy had the following severe impairments: "osteoarthritis of bilateral knees, right ankle fracture status-post open reduction internal fixation (ORIF), fibromyalgia, hypermobility syndrome (HMS)/hypermobility spectrum disorder, diabetes mellitus, obesity, depressive disorder, generalized personality disorder, and posttraumatic stress disorder (PTSD)." *Id.* The ALJ found several other conditions non-severe or not medically determinable. *Id.* at 19–20.

At step three, the ALJ found that Jeremy did not have an impairment or combination of impairments that met or medically equaled a listing. Adm. Rec. at 20–23. The ALJ evaluated Jeremy's fibromyalgia under SSR 12-2p and his obesity under SSR 19-2p, and found that Jeremy's mental impairments caused no more than "moderate" limitation in each of the four broad areas of mental functioning that comprise the Paragraph B criteria. *Id.* at 21–22. The ALJ then assessed Jeremy's RFC. *Id.* at 23. He found that Jeremy could perform a reduced range of sedentary work, with the following limitations:

> [T]he claimant would require the use of an assistive device for ambulation, standing and balance, but would remain at the workstation on task . . . can occasionally climb ladders, ropes and scaffolds, climb ramps and

---

[2] All references to the parties' briefs are to the page numbers assigned by CM/ECF except for factual references to the Administrative Record (Adm. Rec.).

> stairs, stoop, kneel, crouch, crawl, and balance; can occasionally use foot controls bilaterally; can occasionally work at unprotected heights, with moving mechanical parts, and in vibration; can understand, remember and carry out simple instructions and can perform tasks that do not involve a specific production rate pace, such as assembly line work or an hourly production quota; can deal with occasional changes in a routine work setting; and can occasionally have interactions with supervisors, coworkers and the general public.

Adm. Rec. at 23. In reaching this determination the ALJ "considered all symptoms" and the medical opinions and prior administrative medical findings of record. *Id.* at 24. At step four, the ALJ found that Jeremy could not perform his past relevant work as a labor-union business representative. *Id.* at 31. At step five, relying on the testimony of a vocational expert, the ALJ found that suitable work for someone with Jeremy's age, education, experience, and RFC, such as lens inserter, semiconductor bonder, and final assembler, exists in significant numbers in the national economy. *Id.* at 32.

## II

Jeremy contends that the ALJ made three errors. First, he argues that the ALJ failed to consider the combined effects of his physical and mental impairments and did not adequately support the mental limitations in the RFC. Doc. 5 at 9–13. Second, Jeremy argues that the ALJ's finding concerning his subjective statements is not supported by substantial evidence. *Id.* at 14–16. Third, he argues that the ALJ erred by dismissing the approval of his union-pension disability benefits. *Id.* at 16–17. But Jeremy has not established that the ALJ erred. The ALJ applied the correct legal standards, and substantial evidence supports his findings. Accordingly, the Commissioner's decision is affirmed.[3]

---

[3] Because the ALJ committed no error, there is no occasion to reach Jeremy's request that the matter be reversed for an immediate award of benefits. *Contra* Doc. 5 at 17. Such relief is reserved for the rare case in which the record, fully developed, "point[s] but one way" to a finding of disability, and this is not such a case. *See Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (directing an immediate award of benefits only where the record establishes disability as a matter of law and additional fact-finding would serve no useful purpose).

## A

Jeremy first argues that the ALJ failed to account for the combined effects of his physical and mental impairments. Doc. 5 at 9–13. That argument has two strands. He contends, first, that the ALJ failed to account for the pain and fatigue caused by his fibromyalgia and hypermobility, and, second, that the ALJ's limitation to "simple" work did not adequately capture his own step-three finding of moderate limitation in concentration, persistence, or pace. *Id.* The ALJ did not err on either.

Consider the first strand. The record contradicts the premise that the ALJ disregarded the pain and fatigue from Jeremy's fibromyalgia and hypermobility. The ALJ expressly considered Jeremy's impairments "in combination," considered "all symptoms" and the "entire record," and based the RFC on the limitations arising from all of Jeremy's impairments, severe and non-severe. Adm. Rec. at 21, 24. The ALJ accounted for the physical impairments, including the "arthritis and hypermobility syndrome," by reducing Jeremy to a limited range of sedentary work with an assistive device, and folded in the effects of obesity under SSR 19-2p. *Id.* at 21, 29–30.

Jeremy also implies that his pain and fatigue would keep him off task more than ten percent of the workday or absent twice a month so as to preclude any work. Doc. 5 at 8. That argument fails. The ALJ did not find any such limitation, and he did not have to as Jeremy bore the burden to prove the limitations in his RFC. *See* 20 C.F.R. § 404.1545(a)(3). The RFC includes no off-task allowance or attendance restriction, Adm. Rec. at 23, and an ALJ "is only obligated to consider a vocational expert's testimony regarding the limitations that he finds apply to a plaintiff, not limitations he does not find." *Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016); *see also Putnam v. Comm'r, SSA*, 789 F. App'x 694, 700 (10th Cir. 2019) (holding the ALJ did not err in declining to rely on a vocational expert's answer about absences and off-task time that the ALJ did not include in the RFC).

The second strand fares no better. Jeremy contends that the limitation to simple work cannot, without more, account for the ALJ's step-three finding of a moderate limitation in concentration, persistence, or pace. Doc. 5 at 11. That argument misconstrues the sequential evaluation. A finding of "moderate" limitation at step three "does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015). The "Paragraph B" criteria—the four broad areas of mental functioning (understanding or remembering information,

5

interacting with others, concentrating or maintaining pace, and adapting or managing oneself) that an ALJ rates at step three to gauge the severity of a mental impairment—"are not an RFC assessment"; the ALJ assesses the RFC separately, and in more detail, after step three. *Vigil*, 805 F.3d at 1203 (quoting SSR 96-8p). An ALJ may instead account for a claimant's moderate mental limitations "by limiting the claimant to particular kinds of work activity," so long as the limitation reflects the functional effect of the impairment, that is, by translating the moderate findings into specific, work-related restrictions rather than importing the step-three ratings verbatim. *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016).

That is precisely what the ALJ did. He translated those findings into concrete, vocationally defined restrictions, limiting Jeremy to simple instructions, to work without a production-rate pace, to no more than occasional changes in a routine work setting, and to only occasional interaction with supervisors, coworkers, and the public. Adm. Rec. at 23. He also explained that he declined to adopt the state-agency consultants' "1-2 step instructions" phrasing because it was "not vocationally defined," and substituted "more specific, vocationally defined, and policy compliant language." *Id.* at 29. That suffices. *See Vigil*, 805 F.3d at 1204 (approving a simple-work limitation where the ALJ tied it to record evidence that the claimant could still perform simple tasks).

Jeremy makes a related argument that, in crafting the mental RFC, the ALJ ignored the consultative examiner's opinion that his capacity to maintain "even occasional interactions" with others "remained uncertain." Doc. 5 at 11. The record belies this argument. The ALJ addressed the opinion directly and explained that the word "uncertain" was "vague and not a specific functional limitation." Adm. Rec. at 29. An ALJ is entitled to discount an opinion that does not translate into a concrete functional restriction, and his explanation here is one that reasonable review can follow. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (noting that ALJ's explanation for the weight given to an opinion need only be specific enough to permit meaningful review).

True, choosing to weigh different parts of the evidence here might result in a different RFC. But a federal court reviewing the ALJ's determinations cannot reweigh the evidence. *Lax*, 489 F.3d at 1084; *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014); *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1182 (10th Cir. 2020). That, however, is what Jeremy seeks.

6

**B**

Jeremy next argues that the ALJ failed to support his finding that Jeremy's statements about the intensity and persistence of his symptoms were "not entirely consistent" with the record. Doc. 5 at 14–16; Adm. Rec. at 24. But the ALJ adequately explained his reasoning, and substantial evidence supports it.

An ALJ evaluating a claimant's symptoms must provide "specific reasons" that are "clearly articulated," but the discussion need only be sufficient to allow a reviewing court to follow the ALJ's reasoning. SSR 16-3p; *see Hendron*, 767 F.3d at 957 (stating that courts "exercise common sense," "cannot insist on technical perfection," and will not reverse where they can "follow the adjudicator's reasoning"). The ALJ met that standard. He explained that Jeremy's claims were inconsistent with the objective examination finding of full strength, full range of motion, normal gait, and no musculoskeletal deformities. Adm. Rec. at 27–28. They were also inconsistent with his reported daily activities, such as living alone, preparing simple meals, doing laundry, and shopping. *Id.* An ALJ may consider both the objective medical evidence and the claimant's activities of daily living in evaluating the severity of symptoms. 20 C.F.R. § 404.1529(c)(2), (c)(3)(i); *see Wilson*, 602 F.3d at 1146 (upholding an ALJ's reliance on the claimant's daily activities in evaluating the severity of symptoms).

Jeremy's objections to that finding do not undermine it. He first contends that the ALJ was required to apply the factors set out in *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987), before considering his gaps in treatment. Doc. 5 at 14. Not so. The *Frey* factors and 20 C.F.R. § 404.1530 govern the distinct situation in which an ALJ finds a claimant disabled but denies benefits because the claimant failed to follow prescribed treatment that would restore the ability to work. *See Frey*, 816 F.2d at 517. That analysis is performed only after the agency finds the claimant otherwise entitled to benefits. The agency "will not determine whether an individual failed to follow prescribed treatment if [it] find[s] the individual is not disabled." SSR 18-3p, 2018 WL 4945641, at *3. Here the ALJ made no such finding. He used Jeremy's treatment history—that Jeremy had not seen his rheumatologist since June 2022 and had not refilled a medication he said was helpful—only as one factor bearing on the consistency of Jeremy's symptom allegations. Adm. Rec. at 27. That use is permitted. *See Qualls v. Apfel*, 206 F.3d 1368, 1372–73 (10th Cir. 2000) (permitting an ALJ to consider a claimant's failure to pursue treatment in weighing the claimant's symptom allegations, without invoking the *Frey* analysis).

Jeremy also argues that the ALJ's reliance on normal objective findings reflects a misunderstanding of fibromyalgia. Doc. 5 at 15. It does not. While the existence and severity of fibromyalgia are not established by objective testing, *see* SSR 12-2p, the functional limitations the condition produces can be assessed through the longitudinal record and objective findings. *See Tarpley v. Colvin*, 601 F. App'x 641, 643 (10th Cir. 2015) (suggesting that the physical limitations imposed by fibromyalgia's symptoms can be objectively analyzed); *Trujillo v. Comm'r, SSA*, 818 F. App'x 835, 844 (10th Cir. 2020) (rejecting the assertion that it was improper for an ALJ to rely on objective medical evidence in the longitudinal record of a fibromyalgia claimant). The ALJ recognized fibromyalgia as a severe impairment, evaluated it under SSR 12-2p, and considered Jeremy's longitudinal treatment record in assessing its functional effects. Adm. Rec. at 21, 25–30. In essence, Jeremy's argument seeks a reweighing of the evidence and the substitution of a more favorable reading, which is something a reviewing federal court may not do. *Lax*, 489 F.3d at 1084; *Newbold v. Colvin*, 718 F.3d 1257, 1265 (10th Cir. 2013) (explaining that a reviewing court considers "only the sufficiency of the evidence, not its weight").

## C

Finally, Jeremy argues that the ALJ erred by failing to explain why he found the approval of his union-pension disability benefits unpersuasive. Doc. 5 at 16–17. He relies on *Grogan v. Barnhart*, 399 F.3d 1257, 1262–63 (10th Cir. 2005), and 20 C.F.R. § 416.904 for the proposition that another entity's disability determination is evidence the ALJ "must consider and explain." But Jeremy misstates the governing standard.

Under the current regulations, a "decision by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled . . . is based on its rules," is "not binding," and in claims filed on or after March 27, 2017, the agency "will not provide any analysis . . . about" it. 20 C.F.R. § 404.1504; *accord id.* § 416.904. Such decisions are "inherently neither valuable nor persuasive," and the agency "will not provide any analysis about how [it] considered such evidence." *Id.* § 404.1520b(c)(1). The ALJ therefore was not required to analyze the pension approvals at all, and he committed no error in declining to do so. If anything, the ALJ did more than the regulations require by explaining that the pension determinations applied "different standards" and "did not indicate why the claimant was getting the disability pension or the medical basis." Adm. Rec. at 29. The regulation obligated the ALJ to consider only the medical evidence underlying the other entity's decision, *see* 20 C.F.R. § 404.1504, and the pension approvals contained none. Adm. Rec. at 29, 243–45.

8

*Grogan* does not change that. *Contra* Doc. 5 at 17. In that case, applying the regulations then in effect, the Tenth Circuit held that an ALJ was required to consider a Veterans' Administration disability determination and to explain why he found it unpersuasive. *Grogan*, 399 F.3d at 1262–63. But *Grogan* was decided in 2005, before the 2017 amendments. For claims filed on or after March 27, 2017—including Jeremy's, filed in January 2022, Adm. Rec. at 89—the agency no longer provides any analysis of another entity's disability decision, and a reviewing court no longer requires one. 20 C.F.R. § 404.1504; *accord id.* § 416.904; *see also James M. M. v. Saul*, No. 20-4005, 2020 WL 6680386, at *4 (D. Kan. Nov. 12, 2020) (recognizing that the regulations effective March 27, 2017 revised the agency's treatment of disability decisions by other governmental agencies and nongovernmental entities); *Gonzales v. Saul*, No. 19-93, 2020 WL 364843, at *6 (D.N.M. Jan. 22, 2020) (explaining that the regulations underlying *Grogan* have been "significantly altered" and that § 404.1504 now governs claims filed on or after March 27, 2017). *Grogan* therefore does not compel a different result.

### III

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

It is so ordered.

Date: July 10, 2026          s/ Toby Crouse
                                        Toby Crouse
                                        United States District Judge

9